**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LEGACY MEDICAL CONSULTANTS, LP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 4:25-cv-00492-O** |
| | § | |
| **ALLISON CHARLES,** | § | |
| | § | |
| **Defendant.** | § | |


**PLAINTIFF LEGACY MEDICAL CONSULTANTS, LP'S OPPOSITION TO
DEFENDANT ALLISON CHARLES' MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES...................................................................................................ii

I.   INTRODUCTION ........................................................................................................1

II.  STATEMENT OF FACTS ...........................................................................................2

    A.   Legacy's Agreement with Charles ..................................................................2

    B.   The Texas Contacts..........................................................................................2

    C.   Procedural History ...........................................................................................4

III. ARGUMENT................................................................................................................5

    A.   This Court May Exercise Personal Jurisdiction Over Charles...........................................................................................................5

        1.   Charles had sufficient minimum contacts with Texas to satisfy personal jurisdiction.................................................................6

        2.   Legacy's cause of action arose out of Charles' contacts with Texas.................10

        3.   This Court's exercise of personal jurisdiction would not be unfair or unreasonable.....................................................................................11

    B.   Legacy's Claims Are Sufficiently Pled.................................................................13

IV.  CONCLUSION.........................................................................................................17

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783 (5th Cir. 2021) ............................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 13

*Bibbs v. Molson Coors Beverage Co. USA, LLC*, 616 F.Supp.3d 606 (N.D. Tex. 2022)
................................................................................................................................................. 11

*Bluestone Partners, LLC v. Lifecycle Constr. Servs., LLC*, 642 F.Supp.3d 560 (E.D.
    Tex. 2022) ............................................................................................................................... 5

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)......................................................... 6, 7

*Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90 (5th Cir. 1992)
................................................................................................................................................... 6

*CSFB 1998-C2 TX Facilities, LLC v. Rector*, No. 3:14-CV-4142, 2015 WL 1003045
    (N.D. Tex. Mar. 5, 2015) ...................................................................................................... 12

*Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867 (5th Cir. 1999)...................... 5

*Fintech Fund, F.L.P. v. Horne*, 836 F.App'x 215 (5th Cir. 2020) ............................................ 11

*Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734 (S.D. Tex. 1998) ............................... 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall* 466 U.S. 408 (1984)................................... 5

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ........................................... 14

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .................................................................... 5

*Laughlin Energy Motor Sports, LLC v. Americana Pro Detailing Prods. LLC*, No.
    4:22-CV-00876-P, 2023 WL 1805870 (N.D. Tex. Feb. 7, 2023) ................................. 12

*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015 (5th Cir. 1996)........................................... 14

*McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009).......................................................... 8, 9, 10

*Mitchell Energy Corp. v. Martin*, 616 F. Supp. 924 (S.D. Tex. 1985)................................ 14, 15

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) ................................ 8, 9

*Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974) (overruled on
    other grounds)..................................................................................................................... 8, 9

*Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369 (5th Cir. 2003).................................................5

*Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96 (5th Cir. 2018) ........................11

*Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570 (5th Cir. 2020)......................6

*Seiferth v. Helicopteros Atuneros, Inc.*, 274 F.3d 266 (5th Cir. 2006) ........................................5

*Shaffer v. Heitner*, 433 U.S. 186 (1977).......................................................................................5

*Spoljaric v. Percival Tours, Inc*., 708 S.W.2d 432 (Tex. 1986).................................................14

*Stroman Realty, Inc. v. Antt*, 528 F.3d 382 (5th Cir. 2008) .........................................................5

*Sw. Offset, Inc. v. Hudco Pub. Co.*, 622 F.2d 149 (5th Cir. 1980).................................................6

*Tuchman v. DCS Communications Corp.*, 14 F.3d 1061 (5th Cir. 1994)...................................14

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999)...........................................11, 12

*Williams v. WMX Techs.*, 112 F.3d 175 (5th Cir. 1997) .............................................................14

**Statutes**
28 U.S.C. § 1441 ............................................................................................................................4

**Rules**
Fed. R. Civ. P. 12 .........................................................................................................................13

Fed. R. Civ. P. 8 ...........................................................................................................................13

Fed. R. Civ. P. 9 ...............................................................................................................14, 15, 16

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LEGACY MEDICAL CONSULTANTS, LP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 4:25-cv-00492-O** |
| | § | |
| **ALLISON CHARLES,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF LEGACY MEDICAL CONSULTANTS, LP'S OPPOSITION TO
DEFENDANT ALLISON CHARLES' MOTION TO DISMISS**

Plaintiff Legacy Medical Consultants hereby submits Plaintiff Legacy Medical Consultants, LP's Opposition to Defendant Allison Charles' Motion to Dismiss. For the reasons stated herein, the motion should be denied.

## I.    INTRODUCTION

Defendant Allison Charles' motion to dismiss should be denied because the record demonstrates clear, purposeful, and substantial contacts with Texas that establish personal jurisdiction and support the sufficiency of Legacy Medical Consultants' claims. Charles, a healthcare provider based in Arizona, voluntarily entered into a significant contractual relationship with Legacy, a Texas-based company, for the purchase of over $850,000 in proprietary medical products. Every aspect of this business relationship—execution, order processing, product packing, shipment, invoicing, and the contractual obligation to remit payment—was centered in Fort Worth, Texas. The Agreement expressly provides that Texas law governs the parties' relationship, and Charles' repeated assurances of payment, followed by her complete failure to pay, caused direct and substantial harm to Legacy in Texas. These facts not only satisfy the requirements for specific personal jurisdiction under well-established Fifth Circuit precedent, but

also underscore the fairness and appropriateness of litigating this dispute in Texas, where the injury was suffered and where Legacy's business operations are based. Charles' attempt to avoid accountability in this forum is unavailing in light of her deliberate and ongoing engagement with a Texas entity, and her motion should be denied so that Legacy's claims may be adjudicated on the merits.

## II.    STATEMENT OF FACTS

### A.    Legacy's Agreement with Charles

Legacy is an integrated marketer of proprietary regenerative biomaterial products processed from human amniotic membrane and other birth tissues. Pl.'s Original Pet.[1] ("Pet."), ECF No. 1-4 ¶ 10. Legacy markets its products to doctors all over the country. *Id.* ¶ 10. Legacy is a Texas limited partnership with its principal place of business in Fort Worth, Texas. *Id.* ¶ 4. Charles is an individual with her principal place of residence in Surprise, Arizona. *Id.* ¶ 3.

On or about February 8, 2024, Charles, doing business as ACharles Consult, LLC ("Charles"), entered into a Purchase Agreement (the "Agreement") with Legacy. **Exhibit 1, Bini Decl.** at 4; Pet. ¶ 13; Pet. Ex. A. Per the terms of the Agreement, Legacy agreed to sell, and Charles agreed to purchase, human cell and tissue products. Pet. ¶ 14, Ex. A. Charles would then administer these products to patients as medically necessary. Pet. ¶ 14, Ex. B ¶ 3; **Ex. 1** at 5. The Agreement required Charles to remit payment to Legacy within sixty (60) days after product shipment. Pet. ¶ 22, Ex. A ¶ 6.

### B.    The Texas Contacts

After Charles submitted order forms for human tissue products ("products"), Legacy's employees in Fort Worth, Texas, generated order statements reflecting the terms of each purchase.

---

[1] Plaintiff's Original Petition can be found in Defendant's Notice of Removal, ECF No. 1-4.

Pet. ¶ 17; **Ex. 1** at 5. Legacy promptly packed and shipped the products identified on the order statement for delivery to Charles using second-day delivery. Pet. ¶ 18, Ex. B ¶ 4; **Ex. 1** at 5. Legacy would also provide the shipment's delivery status information to Charles. Pet. ¶ 19. On the day that products were shipped, Legacy sent Charles an invoice per order via email. Pet. ¶ 13. At the end of each month, Legacy delivered to Charles an email with a summary PDF document containing all of the prior month's invoices, which reflected all amounts Charles owed Legacy for products ordered in the preceding month. Pet. ¶ 21, Ex. B ¶ 5. Charles was bound to make payment to Legacy in the amount specified on the monthly invoice for all products she received. Pet. ¶ 15.

In less than two months, Charles placed six separate orders totaling $853,425.92, each of which was processed, packed, and shipped from Legacy's Fort Worth, Texas facility. *See* Pet. ¶¶ 26-27; **Ex. 1** at 5. In total, Charles purchased 42 individual products from Legacy—none of which did she attempt to pay Legacy for. **Ex. 1** at 5. These individual Legacy products were all processed, packed, and shipped from Fort Worth, Texas. **Ex. 1** at 5. The Agreement expressly provides that Texas law governs the parties' relationship, and Charles was required to remit payment to Legacy's Texas bank account. *See* Pet. ¶ 9; **Ex. 1** at 5. Legacy executed the Agreement in Fort Worth, Texas. **Ex. 1** at 5. Legacy stored the products in its Fort Worth, Texas warehouse and shipped these products to Charles from that facility. **Ex. 1** at 5. All invoices, monthly summaries, and order communications originated from Legacy's Texas headquarters and were sent to Charles in Arizona. **Ex. 1** at 5. Legacy also received email communications from Charles' practice. **Ex. 1** at 5–6. Charles had the option to purchase similar products from other vendors but instead chose to contract with Legacy, a Texas-based entity, thereby purposefully availing herself of the benefits and protections of Texas law. **Ex. 1** at 6. As of June 2025, Charles remains delinquent on a liquidated balance of $853,425.92. **Ex. 1** at 6; Pet. Ex. B ¶¶ 6–7.

3

### C. Procedural History

Legacy initiated this action by filing suit against Charles in the 153rd Judicial District Court of Tarrant County, Texas. Legacy's claims include fraudulent misrepresentation, breach of contract, and, in the alternative, quantum meruit, promissory estoppel, and unjust enrichment, all arising from Charles' alleged failure to pay for *any* of the products supplied under the Agreement. *See* Pet. Because Charles' counsel was not authorized to accept service on her behalf, Legacy proceeded with formal service of process. *See* **Exhibit 2, Plaintiff's Motion for Substituted Service**, at 8. Legacy attempted to serve Charles at multiple different addresses on countless occasions, including several service attempts at 15333 West Hearn Road, Surprise, Arizona 85379 (*i.e.*, the location which was her most likely place of abode before she purchased her new home, the location in which she registered her limited liability companies with the State of Arizona, and the location in which her vehicle is registered) and a service attempt at 15134 West Corrine Drive, Surprise, Arizona 85379 (*i.e.*, her new home) when her vehicle was parked in the driveway. *See* **Ex. 2** at 8 – 11. Due to Charles evading service, Legacy filed Plaintiff's Motion for Substituted Service in the 153rd Judicial District Court of Tarrant County, Texas, which the state court immediately granted. *See* **Ex. 2** at 11–12; **Exhibit 3, Order Granting Plaintiff's Motion for Substituted Service**, at 41.

On the same day that Legacy effectuated service, Charles exercised her right of removal and transferred the case to this Court pursuant to 28 U.S.C. § 1441(a). *See* Def.'s Notice of Removal ("Notice"), ECF No. 1. After removal, Charles responded by filing a Motion to Dismiss the amended complaint for lack of personal jurisdiction and failure to state a claim.

4

## III.  ARGUMENT

### A.  This Court May Exercise Personal Jurisdiction Over Charles

A federal district court may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits it, and the exercise of jurisdiction is consistent with due process. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). The Texas long-arm statute extends to the limits of the Federal Constitution, so the analysis focuses on whether Charles has sufficient minimum contacts with Texas and whether the exercise of jurisdiction would be fair and reasonable. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

Due Process, in turn, requires that the defendant have "minimum contacts with the forum state such that the defendant purposefully availed himself of the privilege of conducting activities and business in the forum state." *Bluestone Partners, LLC v. Lifecycle Constr. Servs., LLC*, 642 F.Supp.3d 560, 564 (E.D. Tex. 2022). The Fourteenth Amendment minimum contacts analysis "allows a court to assert personal jurisdiction over defendants that have meaningful 'contacts, ties, or relations' with the forum state." *Stroman Realty, Inc. v. Antt*, 528 F.3d at 385 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Such contacts can give rise to either general or specific jurisdiction. *Id.* General jurisdiction exists when a defendant's contacts with the forum state are substantial and continuous, even if unrelated to the cause of action. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003). Specific jurisdiction may exist where the "controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall* 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Here, this Court has specific personal jurisdiction over Charles.

Courts apply a three-step test to determine whether a court can exercise specific jurisdiction. *Seiferth v. Helicopteros Atuneros, Inc.*, 274 F.3d 266, 271 (5th Cir. 2006). First, the

defendant must have had minimum contacts with the forum state, meaning that the defendant purposefully directed his activities at the forum state and purposefully availed himself of the privileged of conducting business in the forum state. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). Second, the plaintiff's cause of action must have arisen out of the defendant's contacts with the forum state. *Id.* And third, the exercise of personal jurisdiction must not be unfair or unreasonable. *Id.*

### 1. Charles had sufficient minimum contacts with Texas to satisfy personal jurisdiction

Courts will find purposeful availment where the contacts with the forum state result from the defendant's actions that create a "substantial connection" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "In breach-of-contract disputes the [minimum contacts] analysis turns on a 'highly realistic' assessment of the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) (quoting *Burger King*, 471 U.S. at 479) (alterations in original). Courts will give "weighty consideration" to the place where the contract is performed. *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992). Furthermore, courts will also treat the law governing the contract as a relevant factor in determining whether there was purposeful availment. *See id.*; *Sw. Offset, Inc. v. Hudco Pub. Co.*, 622 F.2d 149, 152 (5th Cir. 1980).

Charles' contacts with Texas were not random or fortuitous; rather, they were the result of her deliberate business decisions to enter into a substantial contractual relationship with a Texas company, governed by Texas law, and requiring performance in Texas. She voluntarily and affirmatively entered into a contract with Legacy, a Texas entity domiciled in Fort Worth, Texas, and agreed that Texas law would govern the same. Pet. ¶ 9, Ex. A ¶ 7; **Ex. 1** at 5. The Agreement required Charles to remit payment to Texas, and the injury from her nonpayment was suffered by

Legacy in Texas. **Ex. 1** at 5–6. Charles immediately placed several large orders with Legacy, ordering more than $850,000 worth of Legacy products within two months, while aware of the fact that Legacy was a citizen of Texas. **Ex. 1** at 6. Contrary to her sworn statement, Charles has sent numerous emails to Legacy in Fort Worth, Texas, stringing Legacy along with her assurances of payment. **Ex. 1** at 5–6; App. in Support of Def. Allison Charles' Mot. To Dismiss ("Def. App."), at 2, ECF No. 10. But after placing orders for $853,425.92 of Legacy Products, Charles has refused to make a single payment on a single product. Pet. ¶¶ 26–31; **Ex. 1** at 6.

Legacy executed the Agreement in Texas, and all of Legacy's performance—including order processing, product packing, and shipment—occurred in Texas. **Ex. 1** at 5. The products were all stored in and dispatched from Legacy's Fort Worth facility based on Charles' specific orders. **Ex. 1** at 5. There was no unilateral decision by Legacy to ship the products, as the products would only be shipped from Texas based on Charles' specific orders and authorization. **Ex. 1** at 5. Charles had the option to take her business elsewhere and avoid contract performance in Texas, but chose not to. **Ex. 1** at 6.

Charles argues that merely entering into a contract is not enough for personal jurisdiction. Def. Allison Charles' Mot. To Dismiss ("Mot. to Dismiss") at 6, ECF No. 9. However, Charles need not have physically entered or been present in Texas for this Court to exercise jurisdiction. *See Burger King*, 471 U.S. at 476. It is the reality of contemporary business transactions that "a substantial amount of business" will be "transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.*

Legacy relies on more than just the mere existence of a contract by itself to establish personal jurisdiction. The contractual terms included a Texas choice-of-law provision that Charles

voluntarily signed and assented to. Pet. ¶ 9, Ex. A ¶ 7; **Ex. 1** at 7. Legacy has fulfilled several of Charles' orders in Texas, amounting to more than $850,000 worth of product shipped within a two-month span, to Charles from Texas. **Ex. 1** at 5–6. Charles knew she had contractual obligations to send money to Legacy's Texas bank account, and she sent numerous emails to Legacy in Fort Worth, Texas in an effort to forestall legal action. Ex. A ¶ 7; **Ex. 1** at 5–6. And the harm from Charles' misrepresentations that she would pay when she, in fact, had no intention on paying Legacy was felt in Fort Worth, Texas.

Charles relies on *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009) and *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) in arguing that she does not have sufficient minimum contacts with the State of Texas. However, these cases are distinguishable from the facts here. Unlike the defendants in *McFadin* and *Moncrief*, Charles' contract with Legacy was governed by Texas law, executed in Texas, and required substantial performance in Texas. In contrast, the contracts in those cases were centered outside Texas and did not require performance in Texas. Charles' conduct is more analogous to the facts in *Product Promotions, Inc. v. Cousteau*, where the Fifth Circuit found personal jurisdiction proper because the contract was consummated in Texas, governed by Texas law, and the defendant could reasonably foresee being haled into court in Texas.

In holding that the defendant did not have sufficient minimum contacts, the *McFadin* Court distinguished its facts from *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974) (overruled on other grounds). *McFadin*, 587 F.3d at 760. The *McFadin* Court did not follow *Cousteau* because the *Cousteau* Court relied heavily on the contract being "consummated in Texas and that Texas law would likely apply to the contract." *Id.* Like the *Cousteau* defendants, Charles "had reason to foresee that enforcement and protection of [Legacy's] own rights under the contract

might depend on the laws of Texas." *Id.* (quoting *Prod. Promotions*, 495 F.2d at 497). On the other hand, the *McFadin* plaintiffs traveled to Colorado to establish the representation relationship, and the contract at issue in *McFadin* appeared to have been formed in Colorado. *Id.* There is no doubt that Charles entered into the Agreement with a Texas company, and the Agreement is governed by Texas law. *See* Pet. Ex. A ¶ 7. Further, Legacy executed the Agreement in Fort Worth, Texas—not Arizona. *See* **Ex. 1** at 5.

*Moncrief* similarly recognizes that exchanging "communications in the course of developing and carrying out a contract also does not, ***by itself***, constitute the required purposeful availment of the benefits and protections of Texas law." *Moncrief*, 481 F.3d at 312 (emphasis added). But again, its facts are distinguishable. The *Moncrief* Court went on to say that "a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Id.* But here, the Agreement ***did*** require most of the performance to be in Fort Worth, Texas—Charles had to place an order with Legacy in Texas, Legacy packaged and shipped the products from its Fort Worth, Texas headquarters, and Legacy generated and sent invoices from its Fort Worth, Texas headquarters, per the Agreement. *See* **Ex. 1** at 5. The *Moncrief* Court also observed that Moncrief being based in Texas was irrelevant to the contract at issue. *Moncrief*, 481 F.3d at 313. Moncrief was an international company, and the contract did not state where Moncrief's performance would occur. *Id.* Compare that to Legacy. Legacy is solely based out of Fort Worth, Texas, and Legacy's performance only occurred in Fort Worth, Texas. **Ex. 1** at 5.

Both a Texas state court and a federal court in this district have found personal jurisdiction over defendants in contract disputes with Legacy, where the defendants entered into repeated

transactions with Legacy, agreed to Texas law, and remitted payment to Texas, as Charles did here. *See* **Exhibit 4 at 43, Order Overruling Def.'s Special Appearance**; **Exhibit 5 at 45, Order Denying Motion to Dismiss or Transfer.** The Texas state court found that the defendant "at a minimum, entered into repeated transactions with [Legacy] under the contract over an extended period of time, and remitted payment to [Legacy]'s Texas bank account." **Ex. 4.** Furthermore, the "[d]efendant voluntarily entered into the contract and agreed that Texas law would govern the same." *Id.* The defendant "had the option to purchase the contracted goods from other vendors but chose to contract with [Legacy], thereby invoking and relying upon Texas law." *Id.* Because of these reasons, the court found that "[Legacy] has alleged and shown [the defendant]'s sufficient minimum contacts with, and purposeful availment of, Texas."

Charles' self-serving declaration does not rebut the documentary evidence of her repeated, purposeful contacts with Texas, including her execution of a Texas-governed contract, her substantial orders from a Texas company, and her ongoing communications with Legacy's Texas-based employees. Charles' conduct was directed towards Fort Worth, Texas, and she caused injury in Fort Worth, Texas by failing to make a single payment. Given these contacts, Charles should have "reasonably anticipate[d] being haled into court" in Texas. *McFadin*, 587 F.3d at 759. Accordingly, Charles had sufficient contacts and connections with Texas to satisfy the requirements of minimum contacts and purposeful availment as required by the Constitution.

If the Court finds the current record insufficient to resolve the issue of personal jurisdiction, Legacy respectfully requests limited discovery regarding Charles' contacts with Texas to further establish the propriety of jurisdiction.

### 2. Legacy's cause of action arose out of Charles' contacts with Texas

Legacy's claims arise directly from Charles' contacts with Texas: the contracts she signed with a Texas entity, the packaging and shipment of products from Texas, and the preparing and

sending of invoices from Texas. The litigation is thus directly related to Charles' purposeful activities in Texas. For a forum to have specific personal jurisdiction over a defendant, the suit must "arise out of or relate to" the defendant's contacts with the forum state. *Bibbs v. Molson Coors Beverage Co. USA, LLC*, 616 F.Supp.3d 606, 614 (N.D. Tex. 2022) (alterations omitted). Here, Legacy's suit against Charles "arises out of" and "relates to" to Charles' contacts with Texas. *See id.* Namely, the contracts she signed with a Texas entity and with a Texas choice-of-law provision and the shipment of products from Texas that she accepted. Pet. Ex. A; **Ex. 1** at 5–6. In short, Legacy's cause of action arose from Charles' contacts with Texas.

### 3. This Court's exercise of personal jurisdiction would not be unfair or unreasonable

Charles has not argued, let alone shown, that the exercise of personal jurisdiction would be unfair or unreasonable. In evaluating whether the exercise of personal jurisdiction would be fair and reasonable, courts consider the following factors:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

*Fintech Fund, F.L.P. v. Horne*, 836 F.App'x 215, 221 (5th Cir. 2020) (citing *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018)).

Charles bears the burden of making a "compelling case" that the assertion of jurisdiction is unfair and unreasonable. *See id.*; *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) ("Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair."). It "rare to say the assertion is unfair after minimum contacts have been shown." *Brandt*, 195 F.3d at 215. Furthermore, "[t]he burdens imposed by travel to and from a forum are not enough, standing alone, to make the exercise of

specific jurisdiction unreasonable." *CSFB 1998-C2 TX Facilities, LLC v. Rector*, No. 3:14-CV-4142, 2015 WL 1003045 at *6 (N.D. Tex. Mar. 5, 2015) (attached hereto as **Exhibit 6**, at 52).

Here, Charles has failed to argue ***at all*** why the exercise of personal jurisdiction would be unfair or unreasonable, and thus fails to meet her burden. *See generally* Mot. to Dismiss. At most, she claims she had no "reasonable expectation" of being haled into court in Texas. Mot. to Dismiss at 4. But this bald assertion is belied by her Agreement that Texas law applies, her receipt of products from Texas, and her own emails to Legacy in Texas. Indeed, Charles benefitted from the business relationship by using Legacy's innovative products to treat her patients. **Ex. 1** at 6. Because Charles has minimum contacts with Texas, "the interests of the forum and the plaintiff justify even large burdens on the defendant." *See Brandt*, 195 F.3d at 215. Texas has a substantial interest in ensuring that contracts entered into by its residents are enforced. *See Laughlin Energy Motor Sports, LLC v. Americana Pro Detailing Prods. LLC*, No. 4:22-CV-00876-P, 2023 WL 1805870 at *3 (N.D. Tex. Feb. 7, 2023) (attached hereto as **Exhibit 7** at 58). Legacy, a resident of Tarrant County, has an interest in "maintaining one convenient and effective lawsuit in its place of domicile." *See id.* Accordingly, the exercise of personal jurisdiction over Charles is not unfair or unreasonable.

Texas has a strong interest in protecting its residents and businesses from out-of-state actors who enter into substantial contracts with Texas entities and then fail to perform. Requiring Legacy to litigate in Arizona would be fundamentally unfair, as all of Legacy's performance and the resulting harm occurred in Texas.

In sum, the Fifth Circuit's three-step test for specific jurisdiction is satisfied here: (1) Charles purposefully directed her activities at Texas by entering into a contract with a Texas entity, which was performed in Texas; (2) Legacy's claims arise directly from this Texas-based contact,

including the contracts and shipments; and (3) the exercise of jurisdiction is neither unfair nor unreasonable, as Texas has a strong interest in enforcing contracts involving its citizens, and Charles has not shown that litigating in Texas would impose an undue burden. The burden of travel alone is insufficient to defeat jurisdiction, especially where the defendant has purposefully availed herself of the forum. *CSFB 1998-C2 TX Facilities, LLC v. Rector,* No. 3:14-CV-4142, 2015 WL 1003045 at *6 (N.D. Tex. Mar. 5, 2015) (**Ex. 6**, at 52).

If the Court finds that the current record is insufficient to resolve the issue of personal jurisdiction, Legacy respectfully requests additional time to conduct limited discovery from Charles regarding her contacts with Texas. This is a well-established practice when jurisdictional facts are in dispute or unclear.

### B.  Legacy's Claims Are Sufficiently Pled

Legacy's Original Petition satisfies Rule 9(b) by specifically alleging: (1) the time of the misrepresentation—February 8, 2024, when the contract was executed; (2) the place—Texas, via the contract and related communications; (3) the content—Charles' promise to pay within sixty days of shipment; (4) the speaker—Charles; and (5) what she obtained—$853,425.92 in product.

Under Rule 12(b)(6), a complaint may be dismissed if it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Under this standard and Rule 8(a)(2), a complaint "does not need detailed factual allegations," and allegations must merely "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a claim need only be "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Importantly, in deciding a motion to dismiss, the court must "accept[] all well-pleaded facts as

true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).

Here Legacy is alleging claims of fraud against Charles, for making a false promise to pay Legacy for Legacy Products. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) ("A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, with no intention of performing the act.") Dismissal for failure to plead fraud with particularity under Rule 9(b) of the Federal Rules of Civil Procedure is treated as dismissal for failure to state a claim upon which relief may be granted. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See id.* What constitutes "particularity" differs with the facts of each case. *Ettem USA, Inc. v. Kollmorgen Corp.*, No. CIV.A. G-05-325, 2005 WL 2850240 at *1 (S.D. Tex. Oct. 29, 2005) (attached hereto as **Exhibit 8** at 62). "A complaint need not . . . state all facts pertinent to a case in order to satisfy the requirements of Rule 9(b)." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734, 742 (S.D. Tex. 1998) (citing *Mitchell Energy Corp. v. Martin*, 616 F. Supp. 924, 927 (S.D. Tex. 1985)). However, the Fifth Circuit interprets Rule 9(b) to require plaintiffs to allege the particulars of "time, place, and contents of the false representations, as well as the identity of the person making the representation and what [that person] obtained thereby." *Williams v. WMX Techs.*, 112 F.3d 175, 177–78 (5th Cir. 1997) (quoting *Tuchman v. DCS Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)) (alteration in original).

The focus of the Rule 9(b) inquiry should be whether the pleading is sufficiently particular to satisfy the purposes of Rule 9(b). *Martin*, 616 F. Supp. at 927.

> The rule has three purposes. First, to ensure that the allegations are ***specific enough to inform a defendant of the act of which the plaintiff complains*** and to enable him to prepare an effective response and defense. Second, ***it eliminates those complaints filed "as a pretext for discovery of unknown wrongs*** ." Third, Rule 9(b) seeks to protect defendants from ***unfounded charges of wrongdoing*** which inquire their reputations and goodwill.

*Id.* (emphasis added).

Here, Legacy's original petition meets all the requirements of Rule 9(b). The petition states the time of Charles' misrepresentation. Pet. ¶¶ 13, 35, 36. Charles made her misrepresentation to Legacy on February 8, 2024. *See id.* Legacy's petition also states the place of Charles' misrepresentation as Texas. *Id.* ¶ 7. Furthermore, Charles is fully aware of where her fraudulent misrepresentations originated from and to where they were directed. *See Ettem USA, Inc.*, 2005 WL 2850240 at *2 (**Ex. 8** at 63) ("Given the specific and narrow business relationship between the parties, as well as the finite locations where the Parties conducted business with one another, it is clear that the Defendant has notice of 'where' the alleged fraud took place. . ."). Legacy provided the content of the fraudulent misrepresentations, which was Charles' fraudulent statement that she would pay for the products within sixty days of product shipment. *See* Pet. ¶¶ 35, 36. Legacy identified the speaker of the fraudulent misrepresentation as the defendant, Allison Charles. *Id.* ¶¶ 34–42, 44. Legacy also stated that as a result of Charles' fraudulent misrepresentation she "has been using Legacy's human tissue products to her benefit. . ." *Id.* ¶ 39. Legacy also pled the value of the products, which Charles' obtained as a result of her fraudulent misrepresentations, at $853,425.92. *Id.* ¶ 67. Accordingly, Legacy sufficiently alleged the particulars of "time, place, and contents of the false representations, as well as the identity of the person making the representation and what [that person] obtained thereby," as was required. *See Ettem USA, Inc.*, 2005 WL 2850240 at *1–3 (citations omitted) (**Ex. 8** at 62–64).

Furthermore, Legacy's petition fulfils the purposes of Rule 9(b). First, Legacy's allegations are specific enough for Charles to be aware of which act Legacy is complaining of. It is Charles' fraudulent misrepresentation that she would pay for all products ordered within sixty days. Second, Legacy has not brought this suit as a pretext to discover unknown wrongs, but only to recover $853,425.92 owed to it by Charles as a result of product that Charles ordered from Legacy, but never paid for. And finally, Legacy's suit against Charles is not based on any "unfounded" allegations of wrongdoing, but are rather based on Charles' concrete and written false promises to pay Legacy for products it shipped to Charles. Legacy's claims against Charles for fraudulent misrepresentation do not conflict with the purposes of Rule 9(b) and thus should not be dismissed.

The circumstantial evidence—including the size and frequency of Charles' orders, her immediate and total failure to pay, and her repeated assurances of payment—supports a plausible inference that Charles never intended to perform at the time of contracting, which is sufficient to state a claim for fraudulent misrepresentation at the pleading stage.

Legacy relied on Charles' representations to its detriment by shipping over $850,000 in valuable products, and the harm from Charles' nonpayment is concrete, direct, and fully traceable to her conduct.

Accordingly, because Legacy's allegations in its Original Petition meet both the particularity requirements of Rule 9(b) and the purposes behind the Rule, the Court should not dismiss Legacy's claims for fraudulent misrepresentation.

Even if the Court finds the fraud claim insufficient, Legacy's claims for breach of contract, quantum meruit, promissory estoppel, and unjust enrichment are well-pled and should survive at this stage. In the alternative, Legacy respectfully requests leave to amend its pleadings to cure any deficiencies.

## IV.    CONCLUSION

For these reasons, the Court should deny Charles' motion to dismiss and motion to transfer. If the Court determines that the record is insufficient to resolve the issue of personal jurisdiction, it should grant Legacy's request for limited discovery on that issue. Legacy's alternative claims for quantum meruit, promissory estoppel, and unjust enrichment are properly pled and should not be dismissed at this stage.

Respectfully submitted,

BLANK ROME, LLP
200 Crescent Ct #1000, Dallas, TX 75201
717 Texas Ave, Suite 1400, Houston, TX 77002
Tel: 713/623-8613

*/s/ Audrey F. Momanaee*
Audrey F. Momanaee
State Bar No. 24055993
Fed Bar No. 724132
Christopher McNeill (local counsel)
State Bar No. 24032852
Gregory J. Moore (*pro hac vice*)
State Bar No. 24055999
Audrey.momanaee@blankrome.com
**ATTORNEYS FOR LEGACY MEDICAL CONSULTANTS, LP**

Date: June 17, 2025

### CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties of record.

*/s/ Audrey F. Momanaee*
Audrey F. Momanaee